UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        *Plaintiff*,

   v.                                    Case No. 18-CR-00145 (PP-WED)

LISA HOFSCHULZ and ROBERT HOFSCHULZ,

        *Defendants*.

---

### UNITED STATES' RESPONSE TO LISA HOFSCHULZ'S
### MOTION TO SUPPRESS

---

The United States of America, by undersigned counsel, respectfully submits this response to Lisa Hofschulz's Motion to Suppress and Memorandum in Support (Docs. 33 & 34, collectively "Motion to Suppress"). First, the Motion to Suppress should be denied because it is untimely. Second, the Motion to Suppress should be denied because it rests on the incorrect premise that the Medical Examiner did not test F.E.'s body for alcohol when conducting an autopsy. He did. Finally, the Motion to Suppress should be denied because none of the items that law enforcement failed to preserve were exculpatory, and even if they were exculpatory, there is certainly no evidence that law enforcement knew the items were exculpatory and nonetheless failed to preserve them (or failed to preserve them in bad faith).

## PROCEDURAL BACKGROUND

On June 26, 2018, a grand jury in the Eastern District of Wisconsin indicted Lisa Hofschulz and Robert Hofschulz on various charges related to distributing controlled substances outside of a professional medical practice and not for a legitimate medical purpose in connection with a pain

1

clinic they owned and operated. Doc. 1. At the arraignment on July 19, 2018, counsel for the United States made clear to counsel for Lisa Hofschulz that the United States planned to supersede and add a death-resulting charge relating to patient F.E. against Lisa Hofschulz if the parties could not resolve the case short of trial. On July 20, 2018, the United States produced discovery that included evidence related to the F.E. overdose death including all three exhibits that Lisa Hofschulz attached to her Motion to Suppress. *See* Doc. 34, Ex. A-C. In October of 2018, the United States produced in discovery pictures of F.E.'s death scene. After several extensions, the pre-trial motion deadline in this case was set January 7, 2019. Doc. 25. Neither defendant filed any pre-trial motions. On February 26, 2019, a superseding indictment was filed that added a death-resulting charge against Lisa Hofschulz based on the overdose death of F.E. Doc. 29. At an arraignment on March 4, 2019, the Magistrate Judge set the pre-trial motion deadline for April 15, 2019, and indicated that if either defendant filed a pre-trial motion, he or she should indicate why that motion could not have been filed prior to the original deadline. *See* Doc. 32. On April 12, 2019, Lisa Hofschulz filed the Motion to Suppress arguing that the "toxicology report, autopsy report, and any evidence pertaining to the cause of the decedent's death [should be suppressed] because the Milwaukee Police Department and Medical Examiner failed to preserve 1) bottles of alcohol, 2) medication bottles, and 3) cash, and 4) the Medical Examiner failed to test decedent for the presence of alcohol before determining the cause of death." Doc. 34 at 2.

## FACTUAL BACKGROUND

On Saturday, November 21, 2015, Milwaukee Police Department ("MPD") Police Officer Joel Bunkelman and his partner were dispatched to a residential address to a "Dead on Entry" call. Doc. 34, Ex. C at 4. They observed F.E. dead on the floor. *Id.* They interviewed F.E.'s sister who stated that she last saw F.E. alive the night before at 9:30 p.m. and that he was very intoxicated.

*Id.* Officer Bunkelman reported that F.E.'s prescriptions for "Morphine and Oxycodone were filled on 11/19/15. The Morphine had 19 pills short of its regular use and the Oxycodone was approximately 85 short of its regular use . . . . There were no signs that this was a suicide." *Id.* There were $640.00 in U.S. currency near the drawer next to the bed. *Id.* At the request of F.E.'s sister, the money was turned over to another MPD Officer who was the niece of the deceased. *Id.* Bunkelman then noted that "Milwaukee County Medical Examiner Ann Marie Eschle responded to the scene and took control of the body." *Id.* Bunkelman's partner took 16 photos of the scene, and Bunkelman's report ends by stating: "This case is closed." *Id.*

The Milwaukee County Medical Examiner ("MCME") Investigator Anne-Marie Eschle wrote a report that noted F.E.'s sister admitted to getting F.E. a bottle of whiskey on November 20, 2015. Doc. 34, Ex. B at 4. F.E.'s sister went to check on him the next day and when she saw him unresponsive on the floor, she called 911. *Id.* Investigator Anne-Marie Eschle reported that "Officer Bunkelman informed me there was no sign of any trauma and nothing suspicious at the scene." *Id.*

When MCME Investigator Anne-Marie Eschle arrived on the scene, she noted that "[a] mostly full 750 mL bottle of Old Thompson American Whiskey and a partial 1 pint 8 ounce bottle of Cornoa beer was observed on a TV tray." *Id.* She saw his oxycodone and morphine sulfate pill bottles and counted the remaining pills and noted "[t]he Medications were not taken by MPD as the family indicated they would take them to the pharmacy to be destroyed." *Id.*

The MCME records then indicate that Brian Linert, M.D. performed an autopsy on F.E.'s body. Doc. 34, Ex. B. at 10. The autopsy report indicates that F.E.'s Cardiac (heart) Blood and Vitreous (eye fluid) were tested for Volatiles, which includes ethanol (the alcohol metabolite).[1]

---

[1] *See e.g.*, https://www.mayocliniclabs.com/test-catalog/Overview/89190 ( "Volatile Screen, Blood" is "Useful For," *inter alia*, "Quantification of the concentration of ethanol in blood that correlates with the degree of intoxication").

*Id.* The autopsy indicated that Volatiles were "Not Detected." *Id.* The autopsy result showed extremely high levels of Oxycodone (840 mcg/L) and a substantial amount of Morphine (free) and Oxymorphone. *Id.* at 11. Accordingly, the Pathologist ruled that the cause of death was an "Acute Mixed Drug Intoxication (Oxycodone and Morphine)." *Id.* at 8.

## ANALYSIS

**(1) Hofschulz's Motion to Suppress is untimely and therefore should be denied.**

The United States produced the relevant discovery in this case on July 20, 2018. The original pre-trial motion deadline was January 7, 2019. Doc. 25. The evidence, which Lisa Hofschulz now seeks to suppress, was relevant to Count One of the original indictment (Conspiracy to Distribute Controlled Substances). *See* Doc. 1. Accordingly, to the extent she thought that this relevant evidence should be suppressed, she could have moved to suppress it before the original pre-trial motions deadline. Fed. R. Crim. Pro. 12(c) states "CONSEQUENCES OF NOT MAKING A TIMELY MOTION UNDER RULE 12(B)(3). If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." Here, Lisa Hofschulz's Motion to Suppress was untimely, and she did not even attempt to make a showing of good cause. Therefore, the Court should deny the motion as untimely.

**(2) The Motion to Suppress did not show that law enforcement failed to preserve exculpatory evidence, and certainly did not show that law enforcement knowingly failed to preserve exculpatory evidence—or did so in bad faith.**

Hofschulz argues that all evidence related to the death-resulting charge in the Superseding Indictment should be suppressed "because the Milwaukee Police Department and Medical Examiner failed to preserve 1) bottles of alcohol, 2) medication bottles, and 3) cash, and 4) the Medical Examiner failed to test decedent for the presence of alcohol before determining the cause

4

of death."  As a starting matter, Hofschulz's assertion that "4) the Medical Examiner failed to test decedent for the presence of alcohol before determining the cause of death" is simply not true.  As explained above, the autopsy report clearly shows that cardiac blood and vitreous fluid were tested for "Volatiles," which is a common test for alcohol, and there was "None Detected."  Doc. 34, Ex. B. at p. 10.

As Hofschulz correctly quotes, "[a] police officer's duty to preserve evidence applies when the officer either knows the evidence is exculpatory or destroys the evidence in bad faith.  *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)."  The Seventh Circuit has derived a three-part test from *Youngblood* and earlier Supreme Court cases.  *See McCarthy v. Pollard*, 656 F.3d 478, 484-85 (7th Cir. 2011); *see also United States v. Kimoto*, 588 F.3d 464, 475 (7th Cir. 2009).  Namely, "the destruction of potentially exculpatory evidence violates the defendant's right to due process if (1) the State acted in bad faith; (2) the exculpatory value of the evidence was apparent before it was destroyed; and (3) the evidence was of such a nature that the [defendant] was unable to obtain comparable evidence by other reasonably available means."  *Pollard*, 646 F.3d at 484-85.

Here, there was not a duty to preserve the other three items "1) bottles of alcohol, 2) medication bottles, and 3) cash" because there is no evidence in the record that the items are potentially exculpatory or that comparable evidence is not reasonably available.  Second, even if they were exculpatory, there is no evidence in the record that any of the officers or investigators knew they were exculpatory.  For the same reasons, there is no evidence of bad faith in the record.

   **a. None of the evidence that the officers failed to preserve is exculpatory or not otherwise available.**

Hofschulz has not shown how the physical "1) bottles of alcohol, 2) medication bottles, and 3) cash" could be exculpatory.  First, since the Medical Examiner tested for alcohol in F.E.'s body, it is not clear how the presence or absence of additional bottles of alcohol is relevant to

whether the oxycodone and morphine Lisa Hofschulz distributed to F.E. was the "but for" cause of his death. Because there was not any alcohol in F.E.'s body at the time of his death, whether there are other bottles of alcohol in the residence is irrelevant. If, despite that evidence, the defense plans to argue that alcohol caused F.E.'s death, the defense has other evidence besides the actual bottles. The defense can call F.E.'s sister or the investigators to testify about the events and the bottles at the scene. The availability of that evidence defeats any *Youngblood* claim. *Cf. United States v. Bell*, 819 F.3d 310, 318-19 (7th Cir. 2016) (rejecting *Youngblood* claim when live testimony about the lost evidence was available).

Second, the physical medication bottles and pills are not exculpatory. Hofschulz argues that "As a result of the destruction of the pills and the bottles, Defendant cannot determine the amount of pills in the bottle or determine whether they were prescribed by the Defendant." Doc. 34 at 6. There are pictures of the pill bottles that show the RX number and that the prescriptions were filled at Walgreens. *See id.* at 1 (noting that the Government produced "photographs of the room where the decedent died.") Hofschulz has a picture of the bottles, which is comparable evidence to the bottles themselves; it is unclear how the physical bottles would make it any easier or more difficult to prove that Hofschulz wrote the prescriptions. Indeed, pharmacy records will indicate the prescriber and F.E.'s medical records show the prescriptions. Further, two people (MPD Officer Bunkelman and MCME Investigator Anne-Marie Eschle) counted the remaining pills before they were disposed of. Accordingly, the physical pill bottles and pills are neither exculpatory, nor is comparable evidence unavailable to the defense.

Third, Hofschulz argues that "[a]s a result of the destruction of the unusually high amount of cash (in Twenty ($20) Dollar bills) found in the decedent's home, Defendant cannot determine if the cash was related to a drug sale and the reason that many of the Decedent's pills were

missing." Hofschulz does not explain how, if she had the physical cash, she could use that to figure out if it was related to a drug sale or not. Moreover, Hofschulz can call live witnesses to testify about the existence of the cash, which would be comparable evidence. *See Bell*, 819 F.3d at 318-19. Accordingly, the physical cash is neither exculpatory nor essential to the defense.

    **b. Even if the evidence were exculpatory and comparable evidence were unavailable, there is no evidence to suggest that the officers knew of its exculpatory value. For the same reasons, there is nothing in the record to suggest bad faith.**

Even if the items described above were exculpatory and essential—they are not—there is no evidence that either MPD Officer Bunkelman or MCME Investigator Anne-Marie Eschle (collectively the "investigators") had any reason to believe the evidence was exculpatory. In fact, the police reports are clear that at that time, MPD did not open an investigation into anyone and MPD Officer Bunkelman ended his report stating "[t]his case is closed." Doc. 34, Ex. C at 4. MCME Investigator Anne-Marie Eschle reported that "Officer Bunkelman informed me there was no sign of any trauma and nothing suspicious at the scene." Doc. 34, Ex. B at 4. There is no evidence that either investigator knew of any potential investigation into the prescriber. There is no mention of the Drug Enforcement Administration. It was simply a local law enforcement response to an apparently accidental overdose, which has become sadly common. Accordingly, since the investigators did not know there was an investigation into any prescriber, they could not have thought that the evidence was exculpatory.

For the same reasons, there is nothing to suggest that the investigators behaved in bad faith. Seventh Circuit law states: "[a] party destroys a document in bad faith when it does so 'for the purpose of hiding adverse information.'" *See Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013) (internal citation omitted). Since there is nothing to suggest that any of the officers knew about an investigation into the prescriber, there is no possible way that they were acting in bad

7

faith. In fact, the record reflects that they properly investigated what they believed was an accidental overdose. They interviewed F.E.'s sister, took photographs of the scene, and then turned everything over to the Medical Examiner's Office who conducted an autopsy on the body. *See* Doc. 34, Ex. C.

**(3) Even if the officers violated Hofschulz's due process rights by failing to preserve evidence, she cites no authority for her proposed remedy of suppressing all evidence related to the death-resulting charge.**

Hofschulz argues that because "the Milwaukee Police Department and Medical Examiner failed to preserve 1) bottles of alcohol, 2) medication bottles, and 3) cash, and 4) the Medical Examiner failed to test decedent for the presence of alcohol before determining the cause of death" that "the toxicology report, autopsy report, death certificate, and any testimony or forensic evidence regarding the cause of F.E.'s death" should be suppressed. Doc. 33 at 1. Hofschulz does not cite any authority for the proposition that a bad-faith failure to preserve exculpatory evidence should lead to the suppression of all evidence supporting the count—effectively a dismissal. *See* Doc. 34. If this Court somehow determined that the narrow category of evidence Hofschulz identifies was not preserved in bad faith, an effective dismissal of that count is not an appropriate remedy. *See United States v. Soto-Beniquez*, 356 F.3d 1, 30 (1st Cir. 2003) ("Rather than resort to the drastic remedy of dismissal, the district court wisely addressed the prosecution's failures to comply with discovery deadlines on a situation-by-situation basis in order to prevent or remedy any prejudice that those violations may have had on the defendants."); *see also* Fed. R. Crim. P. 16(d)(2) (a court has authority to "enter any other order that is just under the circumstance" for discovery violations). In the event that this Court found a bad faith failure to preserve evidence, the Court should fashion a remedy that would be more proportional and appropriate. *Cf. Bracey v. Grondin*, 712 F.3d 1012, 1020 (7th Cir. 2013) (bad faith is required in the civil spoliation context

8

in order for there to be an adverse inference jury instruction). In this case, however, no such remedy is warranted because there was no due process violation.

## CONCLUSION

For the reasons stated above, the Court should deny Hofschulz's Motion to Suppress.

Respectfully submitted this 29th day of April, 2019.

*s/ Zachary J. Corey*
MATTHEW D. KRUEGER
United States Attorney
ZACHARY COREY
Assistant United States Attorney
Attorneys for Plaintiff
Office of the United States Attorney
Eastern District of Wisconsin
517 E. Wisconsin Ave. Suite 530
Milwaukee, Wisconsin 53202
Tel: (414) 297-1700
Fax: (414) 297-1738
Email: matthew.krueger@usdoj.gov
