UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                            Case No. 18-CR-145

LISA HOFSCHULZ and
ROBERT HOFSCHULZ,

    Defendants.

## REPORT AND RECOMMENDATION

### PROCEDURAL HISTORY

On June 26, 2018, the grand jury returned a fourteen-count indictment against Lisa Holfschulz and Robert Holfschulz, charging them with violations related to distributing controlled substances outside of a professional medical practice and not for a legitimate medical purpose. (ECF No. 1.) On February 26, 2019, the grand jury returned a superseding indictment, adding a death-resulting charge against Lisa Holfschulz based on the overdose death of F.E. (ECF No. 29.) Lisa Holfschulz filed a motion to suppress on April 12, 2019. (ECF No. 33.) Neither Hofschulz nor the government requested an

evidentiary hearing. For the reasons that follow, the court will recommend that Holfschulz's motion be denied.

## BACKGROUND

On November 21, 2015, Officers Joel Bunkelman and Samphanh Luangphaxayachack of the Milwaukee Police Department "were dispatched to a 'Dead on Entry' call" at a residential address. (ECF No. 34-3 at 4.) They found F.E. dead "on the floor of a bedroom located on the second floor." (*Id.*) They interviewed F.E.'s sister, Barbara Strehlow, who stated that she last saw F.E. alive at 9:30 p.m. the night before and that "he was very intoxicated." (*Id.*)

Officer Bunkelman reported that F.E.'s "prescription[s] for Morphine and Oxycodone were filled on 11/19/15." (ECF No. 34-3 at 4.) "The Morphine had 19 pills short of [i]ts regular use and the Oxycodone was approximately 85 short of its regular use." (*Id.*) He also reported that "[t]here was $640.00 dollars in US currency that was located in the drawer next to the bed … all in $20 denominations." (*Id.*) The money "was given to [F.E.'s niece] who is a Milwaukee Police officer." (*Id.*) Officer Bunkelman concluded his report stating, "[T]his case is closed." (*Id.*)

Milwaukee County Medical Examiner Investigator Anne-Marie Eschle "responded to the scene and took control of the body[,] [and] [t]he body was then transported to have an autopsy performed." (ECF No. 34-3 at 4.) Eschle observed "[a] mostly full 750 mL bottle of Old Thompson American Whiskey and a partial 1 pint 8

2

ounce bottle of Corona beer" on a TV tray. (ECF No. 34-2 at 4.) Strehlow "admitted to getting [F.E.] a bottle of whiskey as [Strehlow] … was worried he would go out while he was drunk and get his own." (*Id.*) Eschle also observed "[F.E.'s] medication bottles of oxycodone and morphine" on a dresser. (*Id.*) "The oxycodone 30 (mg) was filled on 11/19/15 for 150 pills … [and] [t]here were only 50 left." (*Id.*) "The Morphine sulfate (60 mg) was also filled on 11/19/15 for 60 pills … [and] [t]here were 35 remaining." (*Id.*) Strehlow stated that she "knew her brother to abuse medications but also believe[d] he may have been selling them as well." (*Id.* at 6.) F.E.'s medications "were not taken by [the Milwaukee Police Department] as the family indicated they would take them to the pharmacy to be destroyed." (*Id.* at 4.)

An autopsy was performed on F.E.'s body, and the results from a toxicology report confirmed the presence of "Morphine (free)" at 50 mcg/L, oxycodone at 840 mcg/L, and oxymorphone at 60 mcg/L. (ECF No. 34-2 at 10-11.) F.E.'s death certificate lists "[a]cute mixed drug intoxication (Oxycodone and Morphine)" as the "immediate cause of death." (*Id.* at 8.)

## ANALYSIS

Hofschulz moves for suppression of "the toxicology report, autopsy report, and any evidence pertaining to the cause of [F.E.'s] death" because "the Milwaukee Police Department and Medical Examiner failed to preserve 1) bottles of alcohol, 2) medication

bottles, and 3) cash, and 4) the Medical Examiner failed to test [F.E.] for the presence of alcohol before determining the cause of death." (ECF No. 34 at 2.) She contends:

> As a result of the destruction of the pills and [medication] bottles, [she] cannot determine the amount of pills in the bottle or determine whether they were prescribed by [her]. Because of the destruction of the bottles of alcohol, [she] cannot determine the amount consumed by [F.E.]—any amount of alcohol in [F.E.'s] system would be exculpatory. As a result of the destruction of the unusually high amount of cash (in Twenty ($20) Dollar bills) found in [F.E.'s] home, [she] cannot determine if the cash was related to a drug sale and the reason that many of [F.E.'s] pills were missing. Finally, there is no evidence that [F.E.] was tested for the presence of alcohol despite the fact that [F.E.'s] sister informed Officer Benkelman [sic] that he was intoxicated at or near the time of his death.

(*Id.* at 6.) "[T]his evidence is vital to understanding F.E.'s actual cause of death and whether or not alcohol contributed to his death." (*Id.* at 4.)

In opposing the motion, the United States first contends that Hofschulz's motion is untimely. The government argues that, "to the extent [Hofschulz] thought that this relevant evidence should be suppressed, she could have moved to suppress it before the original pre-trial motions deadline" of January 7, 2019—that is, the deadline set for the filing of pretrial motions *before* the government filed a superseding indictment to add the death-resulting charge. (ECF No. 35 at 4.) However, Holfschulz's motion, concerning as it does only the cause of F.E.'s death, would not have been relevant to the charges in the original indictment. *See Burrage v. United States*, 571 U.S. 204, 219-20 (2014) ("We hold that, at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable

under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury."). After the government filed the superseding indictment, the court set a new deadline of April 29, 2019, for any pretrial motions relating to the death-resulting charge. Because Holfschulz filed her motion prior to that deadline, the court finds that it is timely.

The United States also contends that Hofschulz's motion "rests on the incorrect premise that the Medical Examiner did not test F.E.'s body for alcohol when conducting [the] autopsy." (ECF No. 35 at 1.) It points out that "[t]he autopsy report indicates that F.E.'s Cardiac (heart) Blood and Vitreous (eye fluid) were tested for Volatiles, which includes ethanol (alcohol metabolite)." (*Id.* at 3) (citing https://www.mayocliniclabs.com/test-catelog/Overview/89190 ("Volatile Screen, Blood" is "Useful For," *inter alia*, "Quantification of the concentration of ethanol in blood that correlates with the degree of intoxication")). In response, Hofschulz appears to concede that the medical examiner performed *a test* for the presence of alcohol, but she argues that the "'volatiles' indicator" test was not a sufficient test to determine F.E.'s blood alcohol level *at the time of death*. (ECF No. 36 at 2.) She contends that the medical examiner should have performed an "ethyl glucuronide" test to properly "determine [F.E.'s] post-mortem blood alcohol level." (*Id.*) As such, notwithstanding the language of her original argument, rather than arguing that the medical examiner *never* tested for the presence of

5

alcohol the court understands Hofschulz to be arguing that the medical examiner failed to *properly* test F.E.'s body for the presence of alcohol.

"When a defendant alleges that the government failed to preserve potentially exculpatory evidence, … [courts] apply the standard articulated in *Arizona v. Youngblood*, 488 U.S. 51 (1988), which states that there is no denial of due process 'unless a criminal defendant can show bad faith on the part of the police.'" *United States v. Cherry*, 920 F.3d 1126, 1140 (7th Cir. 2019) (quoting *Youngblood*, 488 U.S. at 58); *see United States v. Fletcher*, 634 F.3d 395, 407 (7th Cir. 2011) ("*Youngblood* applies when … the government failed to preserve evidence that '*could* have been subject to tests, the results of which *might* have exonerated the defendant.'") (quoting *Youngblood*, 488 U.S. at 57) (emphasis in original). "To establish a *Youngblood* violation, [defendant] must show that the government acted in bad faith, that the exculpatory nature of the evidence was apparent, and that the evidence could not be obtained elsewhere." *Tabb v. Christianson*, 855 F.3d 757, 768 (7th Cir. 2017) (citing *Youngblood*, 488 U.S. at 56).

Hofschulz has presented no evidence that the officers and/or medical examiner acted in bad faith (1) when they failed to preserve alcohol bottles, medication bottles, pills, and cash, or (2) when the medical examiner failed to properly test F.E. for the presence of alcohol. To show bad faith, the defendant "must prove 'official animus' or a 'conscious effort to suppress exculpatory evidence.'" *Jones v. McCaughtry*, 965 F.2d 473, 477 (7th Cir. 1992) (quoting *United States v. Nesbitt*, 852 F.2d 1502, 1520 (7th Cir. 1988)).

6

Hofschulz does not argue that the officers and/or medical examiner acted with such animus or effort. Instead, she criticizes them for their "failure to preserve any evidence that tends to show that [F.E.] was heavily intoxicated and ingesting his medi[c]ation while intoxicated." (ECF No. 34 at 6.) However, "criticism of police methods does not by itself establish a constitutional violation." *Hart v. Mannina*, 798 F.3d 578, 588 (7th Cir. 2015); *see White v. Fitzpatrick*, 755 F. App'x 563, 570 (7th Cir. 2018) ("Mere negligence by police absent a showing of bad faith does not constitute a constitutional violation.").

In addition, even assuming that the alcohol bottles, medication bottles, pills, cash, and the potential presence of alcohol in F.E.'s system would be exculpatory, Hofschulz has presented no evidence that the exculpatory nature of those items was apparent before their destruction. She argues that "[those] items were immediately apparent to be exculpatory because the Medical Examiner and responding officer were informed while they were on the scene that [F.E.] was heavily intoxicated at or near the time of his death." (ECF No. 34 at 2.) While it might be true that the officers and the medical examiner were aware that alcohol may have been a contributing factor in F.E.'s death, there is nothing to suggest that they were aware of a potential investigation into the prescriber of F.E.'s medication. As the government points out, the police reports are clear that the Milwaukee Police Department did not open an investigation into anyone, and Officer Bunkelman concluded his report stating, "This case is closed." (ECF No. 35 at 7 (citing ECF No. 34-3 at 4); *see* ECF No. 34-2 at 8 (suggesting that F.E. died from an accidental overdose).)

7
Case 2:18-cr-00145-PP   Filed 05/17/19   Page 7 of 8   Document 37

Since the government did not act in bad faith, and because the exculpatory nature of the evidence was not apparent to the officers and/or medical examiner before the evidence was destroyed, the government's destruction of potentially exculpatory evidence did not violate Hofschulz's right to due process.

**IT IS THEREFORE RECOMMENDED** that Lisa Hofshulz's motion to suppress (ECF No. 33) be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(2), whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation or prior to the Final Pretrial Conference, whichever is earlier. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 17th day of May, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge