UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 18 CR 145 |
| vs. ) | |
| ) | |
| LISA HOFSCHULZ ) | |

**SECOND MOTION TO CONTINUE**

Comes now defendant LISA HOFSCHULZ, by and through attorney Beau B. Brindley, and hereby moves the court to continue the trial scheduled for February18, 2020. In support, she states as follows:

Trial in this matter is presently scheduled for February 18, 2020. On October 15, 2019, this Court entered an order requiring counsel to advise whether it could accommodate the February 18, 2020 trial date. On October 21, 2019, the undersigned indicated that he could be prepared for trial at that time. At that time, counsel had a trial set for February 10, 2020, which was a potential obstacle. This was *U.S. v. Ferguson* (18 CR 734) in the Northern District of Illinois. That trial was continued as the undersigned expected it could be for myriad reasons. Hence, the undersigned's schedule was cleared of the only issue about which he was aware that could interfere with this case.

As of October 21, 2019, when he agreed that he could accommodate this Court's scheduled trial date, the undersigned was scheduled to conduct trial in *U.S. v. Burris* (17 CR 95) on November 12, 2019, in the Eastern District of Missouri. He was subsequently scheduled to conduct trial in *U.S. v. Frank Purpera (18 CR 19)* on January 21, 2020, in the Western District of Virginia. This left ample time to be prepared for trial in the instant case on February 18, 2020. This was the situation as of October 21, 2019.

1

On October 28, 2019, the government in the *Burris* case disclosed a substantial new cooperating witness that significantly changed the landscape of the case. This disclosure came approximately a week before the scheduled trial. On October 30, 2019, the undersigned moved to continue that trial in order to investigate the claims of the new witness and present additional defense evidence. None of this was foreseeable to the undersigned or known to the undersigned as of October 21, 2019, when he filed a status report in this case. With the *Purpera* trial ending prior to the end of January, there was more than a full two weeks to prepare for this trial on February 18, 2020. That was the undersigned's expectation and plan. The specific things needed for trial preparation were scheduled for these two weeks.

After a series of motions to continue due to issues related to a defense witness in the *Burris* case, a motion to continue was ultimately filed due to a surgical procedure that had to be undergone by counsel for the co-defendant. On January 3, 2020, the Court granted the motion to continue based on the surgical needs of co-counsel. He set trial in the *Burris* case for January 21, 2020. This was a direct conflict with the *Purpera* trial in the Western District of Virginia. Despite needing a continuance for his counsel's surgery, the codefendant would not waive his speedy trial rights beyond February 3, 2020. The undersigned's client entered a broad waiver of his speedy trial rights and requested a March trial date. Because of a direct conflict between these two trial dates, and because the *Purpera* trial had been scheduled long before, the undersigned filed a motion to continue the *Burris* trial. The two judges entered into consultation about the issue. Following that consultation, on January 8, 2020, the Court in the *Burris* case continued the trial to February 3, 2020. None of this was at all within the knowledge or

expectation of the undersigned when he agreed that he could proceed to trial on February 18, 2020. Moreover, the eleventh hour disclosure of a witness and the need for a co-defendant's attorney to have surgery were neither foreseeable nor within the control of the undersigned.

Closing arguments in the *Purpera* trial took place on January 29, 2020. The undersigned was back in the office in Chicago on January 30, 2020 and filed a motion to continue this trial at that time. In that motion, the undersigned set forth the scheduling issues noted above and personal issues regarding the mental health condition of his wife and certain events that cost counsel a week of trial preparation during the week of January 6, 2020. At the hearing on the motion, while sympathetic, the Court indicated that it would not adjourn the trial. The undersigned agreed that he would try his best to be prepared for trial on February 18, 2020, but would be honest with the Court if he was not able to be prepared.

Trial in *U.S. v. Burris* began on February 3, 2020. It involved two defendants. On January 31, 2020 approximately 200 pages of additional discovery was provided. Following the hearing on the motion to continue in this case, the undersigned travelled to the office of the defendant to look at the facility and have some discussions with the defendant regarding trial issues and preparation in this case. Upon return to the office, the cataloguing and review of the new *Burris* was discovery was the next order of business, as well as working with the undersigned's assistant to prepare the trial file. The *Burris* case involved approximately 22,000 pages of discovery materials. That process lasted well into the evening and involved the entirety of the undersigned's staff.

On February 1, 2020, the undersigned and his trial partner spent the day attempting to determine which of the myriad wiretap transcripts in the *Burris* case might be used as exhibits. No transcript binder or anything of the sort had been provided as of that time. This process, divided between the two attorneys took up more approximately 10 hours of time on February 1, 2020. On February 2, 2020, the undersigned reviewed jury instruction issues and voir dire questions in this case. A filing containing defense jury instructions and voir dire issues was then drafted and ultimately filed on February 3, 2020. Additionally, on February 2, 2020, the undersigned began reviewing materials regarding the government's first series of witnesses in the *Burris* trial and preparing for significant motion *in limine* arguments. Mr. Thompson began working on an opening statement for the case.

On February 3, 2020, at approximately 5:00 am, the undersigned and Mr. Thompson drove to St. Louis, Missouri to begin the trial. After motion *in limine* arguments, jury selection was commenced at 12:30 pm. That selection lasted until the end of the trial day, around 5:00 pm. Thereafter, the undersigned and Mr. Thompson began reworking the opening statement based on adverse rulings on the motions. At approximately 7:00 pm, the undersigned and Mr. Thompson traveled to the U.S. Attorney's Office to obtain some additional exhibits that were being prepared. Those exhibits contained Exhibits 35H-1 to 35H-102, which were transcripts of the wire recordings and texts the government intended to publish. Many of them were multiple pages in length. Also included were a series of Exhibits titled the Exhibit 35C series. These involved an approximately 40 additional transcripts. Other exhibits were tendered as well. This was the first time the defense became aware of which of the voluminous

transcripts were going to be utilized by the government at trial. With that knowledge, the undersigned began an exhaustive review of the 35C series of exhibits, which would be featured during the testimony on February 4, 2020. This review process lasted until approximately 2:00 am. It is worthy of note, that the undersigned began the day at approximately 4:15 am in order to travel to St. Louis to begin the trial.

On February 4, 2020, the undersigned began the day at 5:45 am. He continued work on cross examinations and isolation of relevant transcript portions from the government's exhibits. During that same time period, the undersigned took time to prepare instructions for his assistant on how to get all discovery items for this case up onto the network so he could access and review them throughout the course of the *Burris* trial.

Trial in the *Burris* case began at 8:30 am on February 4, 2020 and lasted until approximately 5:00 pm. The principal witness against Mr. Burris was a cooperating informant. His testimony was to take place the following day and would feature testimony about the 35H series of exhibits. At the end of the trial day on February 4, 2020, the Court made the decision that trial would be suspended on February 5, 2020 due to an impending snowstorm. On the evening of February 4, 2020, the undersigned began preparing for an extensive cross examination of the cooperating witness. This examination needed to feature a detailed handling of many of the Exhibit 35H transcripts. At the same time, Mr. Thompson began working on a review of the government's response to the jury instructions in this case and highlighting the legal issues to be addressed. Additionally, on the evening of February 4, 2020, the undersigned was advised by his assistant, Maria Almazan, that the computer network in the office was

down and all of his files on the Hofschulz case were inaccessible and could not be uploaded. Thus, it was impossible for the undersigned to even attempt to split his time between the *Burris* preparation and the review of materials needed to prepare for this trial. This network problem persisted all through Wednesday, February 5, 2020. During February 5, 2020, the undersigned pulled relevant portions of wiretap transcripts from 9:00 am until approximately 7:30 pm. The undersigned then drafted and revised an extensive cross-examination for the cooperating informant until approximately 2:30 am.

On February 6. 2020, trial lasted from 8:45 am until after 5:00 pm. The undersigned's cross-examination was ongoing and continued into February 6, 2020. On the evening of February 5, 2020, the undersigned spent several hours revising the cross-examination. Mr. Thompson began assembling case law to address the jury instruction issue in this case. And the network and computer problems at the undersigned's office continued. On February 7, 2020, trial lasted from 8:45 am until around 4:30 pm. After some discussion of jury instructions, the undersigned and Mr. Thompson drove back to Chicago for a day so the undersigned could spend some time with his wife, whose issues had not improved in his absence. Her sister from Texas was present while the undersigned was gone. However, that did not alleviate significant depression and anxiety as related in the prior motion.

On February 8, 2020 the undersigned and Mr. Thompson worked together to prepare a comprehensive filing on the issue of jury instructions. The undersigned was finally able to access DEA reports regarding this case. However, all prior notations on them from the preliminary discovery examination were lost with the computer failure. Thus, all that could be done on February 8 was the beginning of a prtrial review of some

of the DEA reports. On February 9, 2020, Mr. Thompson and the undersigned were scheduled to fly to St. Louis in the afternoon so as to maximize work time and be able to begin preparations for closing arguments in the Burris case and additional review of the DEA reports in this case. Inclement weather caused the cancellation of the flights that would allow that early arrival in St. Louis. Some scattered closing argument outlining was all that was possible while dealing with the airport and trying to get on a flight that would actually make it to the destination. The undersigned finally arrived in St. Louis around 10 pm on February 9, 2020. At that time, he had to begin drafting the closing argument itself while Mr. Thompson carved dozens of slides from the transcripts of the cross-examination of the informant and from the wiretap transcripts. This process is tedious and takes hours to complete. The undersigned ended the day around 2:00 am. At 5 am, the undersigned arose to continue his closing argument drafting and preparation of arguments regarding jury instructions. Court began at 8:40 am on February 10.

The government's case, which had been forecasted to conclude by lunch, took the entire day. Jury instructions discussions lasted well past 5:00 pm. The undersigned then spent the evening reviewing and revising the PowerPoint presentation that would be used with the closing argument. The undersigned worked on that process until approximately 2:45 am. Closing arguments finally concluded late in the day on February 11, 2020. The jury was unable to reach a verdict that day and travel arrangements had to be changed.

In order to effectively prepare for this case, the undersigned needed to meet with the defendant on a daily basis for approximately 4-6 hours a day for a week. This is the conservative amount of time that the undersigned needs to prepare a defendant to testify in a case like this. The undersigned has used much longer periods of time with

defendants in longer opiate doctor cases in other districts. A week is essential. Originally, the entire week from February 9, 2020 until February 16, 2020 was set aside for this purpose. By the time closing arguments in *Burris* were concluded, the bulk of that time was already lost. But matters became even worse.

On February 10, 2020, the defendant was scheduled to get specific materials, which were being provided by the undersigned, and she was directed to review them. These materials were assembled for this purpose by the undersigned's assistant and their review was meant to jumpstart meetings that could begin as soon as a verdict was reached in the *Burris* case. However, on February 10, 2020, the defendant fell and suffered a significant head and face injury. Photos depicting that injury are attached. The defendant was hospitalized throughout the day on from February 10, 2020 through February 11, 2020 and continues to recover from these injuries.[1] As a result, her ability to review the materials needed for subsequent meetings was made impossible by a significant head trauma. Following the jury verdict in *Burris*, the undersigned was able to get back to Chicago at around 6:00 pm on February 12, 2020.

By this time, the undersigned was emotionally and physically exhausted. He had tried two complex jury trial to completion in back to back weeks. Certain facts about the verdict in the *Purpera* case had been weighing heavily on his mind. He knew Dr. Purpera socially and professionally. The jury's unfair and apparently thoughtless handling of the case plagued his mind as he tried the *Burris* case, as did the more compelling concern regarding his wife's well-being. At this point, the undersigned has put in 14 to 16 hours days for four weeks. He is not physically capable of continuing to

---

[1] If needed, hospital records regarding this injury can be provided.

8

do so. It is not physically or emotionally feasible for him to continue to do so. Having never tried back to back complex federal trial in the past, the undersigned has now learned that the degree of exhaustion is overwhelming. In the past, he has tried state court cases back to back. He once tried two shorter, simple federal drug and gun cases in two back to back weeks. However, an undertaking like the last two trials back to back took a far greater toll on the undersigned than he could have possibly foreseen. It is not possible for him to turn around now and try another complex opiate case where the defendant needs to testify. It is not possible for him to put in the hours and the energy when he has already reached this degree of exhaustion.

Despite trying to find the time to prepare for this case while trying another, it is apparent from what is stated above that there was insufficient time for meaningful trial preparation. There were simply not enough hours in the day. The time that was originally set aside for trial preparation was consumed by the *Burris* trial. Suggesting otherwise would do a disservice to the client and the Court. It is an attorney's duty to tell the Court when he is incapable of effectively proceeding with a defense so as to ensure that no defendant received ineffective assistance of counsel. As the Court can see from what is noted above, there is no sense in which the undersigned is even remotely prepared to try this case.

The head injury from which the defendant is still recovering causes an even greater problem at this time. The undersigned is unable to meet with the defendant on February 13, 2020 as she recovers from this injury. When a criminal defendant in a serious criminal case suffers a facially disfiguring head injury requiring hospitalization days before a trial, that should, by itself, justify a continuance. In this

9

instance, that injury has taken away even the limited preparation time that was available to counsel following the *Burris* trial.

The undersigned has prepared for many of these cases regarding medical professionals who distribute opiates. As a result, he knows what preparation is necessary to be basically ready to proceed. And, in reality, two weeks of preparation prior to trial is necessary. Every lawyer knows that meaningful trial preparation does not actually begin until the weeks before trial. You cannot prepare for a February trial in October or November. That is not pragmatically feasible. And, while the undersigned did a preliminary, macro review of the discovery and had conversations with the defendant in months past, trial and testimony preparation is an altogether different thing. Anyone who suggests otherwise is either uninformed or disingenuous. You need two good weeks to prepare for a trial like this. When we agreed we could proceed with the February 18 date, we knew we would be able to have more than two weeks. We then unexpectedly lost a week due to family tragedy during the week of January 6. And we have lost an additional 13 or 14 days due a combination of the *Burris* trial, which was not set for February 3, 2020 when we agreed to this date, a network failure at the undersigned's office, and a significant head injury to the client days before the trial is set to begin. No attorney alive could undergo all of that, in combination with the personal tragedies previously described, and answer ready for trial on February 18, 2020. The head injury at the end was simply the last straw, which proves that this endeavor is not possible.

To prepare for this trial, it is necessary to (1) spend basically a week of lengthy meetings with the defendant prior to trial; (2) interview other patients and

staff from the office; (3) cross-check the government's expert report with the claims of other known experts and other known literature; (4) review prior testimony of the government's expert; (5) compartmentalize and organize records of all discharged patients; (6) exhaustively review DEA reports for potential witnesses and create cross-examination binders; (7) detailed patient chart review for each charged patient including care from subsequent providers; and (8) obtain and catalogue all literature on the subject of opiate dosages reviewed and relied on by the defendant. This is the minimum amount of preparation that needs to be done. The undersigned knows this because he has done it before.

With two or three weeks of trial preparation, the undersigned's office can do this without any problem. They have done it many times. When the date was agreed to, time was set aside for each step. But, in this instance, the only one of these items that there has been time to even begin is item 6. The other things have been rendered impossible by time that has simply been exhausted. The preparation that has to be done to effectively assist this defendant cannot be done prior to February 18, 2020. The undersigned and his office made efforts to figure out how to manage it during the *Burris* trial. But the time was simply not there; and circumstances converged to work against them. To do anything differently during the *Burris* trial would have prejudiced him unfairly. To claim to be prepared for this trial now—with what amounts to three days of preparation time with a defendant recovering from head trauma—would be a gross misrepresentation of reality. If the undersigned answered ready now, he would be ineffectively assisting this defendant. He cannot and will not do that.

The entire series of circumstances from the beginning of January until the present has put a great strain on the undersigned. He is admittedly exhausted, overwrought, and much less effective than he would normally be. Struggling with the issues at home while trying to undertake a herculean effort in the courtroom is simply more than he can handle without some kind of break. The undersigned's assistant, Maria Almazan, has provided a statement, which is attached to this filing, and which underscores this reality. The undersigned is, plainly stated, overwhelmed and exhausted. Dealing with the loss of the animal and the depression it engendered in his wife has created a gripping sense of guilt due the undersigned's inability to find a way to save this treasured companion and a simultaneous guilt at the division of his time between the clients who trust him with their lives and the wife who is forced to struggle without him at home. The undersigned has tried to shoulder that burden for a month. In so doing, he has become overly emotional at unexpected times, abusive with his staff, and exhausted to the point of dizziness. It has reached a situation in which the undersigned has to say he cannot go any further without a break. During the *Burris* trial, these combined issues reached such a crescendo that the undersigned, at the insistence of his assistant, reached out to his therapist in an effort to obtain some sort of counsel to try to control the cavalcade of emotions that this situation has created. Unfortunately, that appointment had to be cancelled because of the unexpected length of the *Burris* deliberations. The therapist cannot see the undersigned until next week when this trial is set to be ongoing.

The undersigned needs to see his therapist in order to get beyond the exhaustion and overwhelmed emotions with which he is confronted at this time. He is simply not in the psychological or emotional place from which to effectively try this case for a client he believes to be innocent prior to taking a break and seeking the counsel of a professional than can help him manage the multiple issues that confront him. To try another case without that intervention would be an undeniable instance of ineffective assistance of counsel and malpractice. The undersigned cannot do that to this defendant. Many attorneys might just go along with the Court's wishes in light of the difficult schedule. But the undersigned cannot.

The undersigned understands the history of this case. The undersigned views much of that with the same kind of scrutiny with which the Court does. However, the undersigned is also confident that this history did not result from the defendant's action. The defendant came to the undersigned to obtain counsel who will come in and try this case to the end. That is what I do and that is why I am here. However, the undersigned cannot do that without the ability to adequately prepare and while in a state of physical, psychological, and emotional exhaustion that requires both a break and some professional intervention. Therefore, the undersigned has no choice but to answer not ready for trial. Being ready is not possible under these circumstances. A defendant should not be compelled to trial in the immediate wake of a head injury that leaves a her facially disfigured and limits the ability to prepare with counsel. Likewise, a defendant should not be compelled to trial with counsel who can demonstrate that he is not prepared and not in a position from which to effectively present a trial defense. Under these

circumstances, the undersigned is compelled to answer not ready in general and, if trial is commenced, to answer that he is not ready or prepared to proceed with each substantive phase of the trial before the jury. That is the only sincere way to proceed in this situation.

Lastly, the undersigned understands the Court's scheduling issues. If there are costs or fees associated with moving this trial, the undersigned's office will pay them. If the Court feels that, under these circumstances, the undersigned should be sanctioned for answering not ready, the undersigned will likewise pay that sanction. The undersigned is unable to honestly answer ready under these circumstances. That said, the undersigned has reviewed his schedule, and, following a three-week break, during which he can deal with the issues noted above and actually do the necessary preparation for this trial, nearly every other trial on the undersigned's schedule is potentially movable in favor of this case. The only time period that cannot be moved at present is three weeks beginning April 27, 2020, during which the undersigned is representing one of the defendants in the R. Kelly conspiracy trial in Chicago. Outside of that, the undersigned will file a motion to continue any other matter that may conflict with what this Court needs. This is an unusual set of circumstances in which everything that could go wrong did. And, in this situation, the undersigned has no choice but to repeatedly answer not ready and beg this Court for a continuance.

WHEREFORE, the undersigned respectfully moves this Court to continue the trial date set for February 18, 2020.

Respectfully submitted,

Lisa Hofschulz
By: s/ Beau B. Brindley

LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Blvd.
Suite 1410
Chicago, Illinois 60604
312.765.8878