UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA )|  |
| ) | 18 CR 145 |
| vs. ) | |
| ) | |
| LISA HOFSCHULZ ) | |

**MOTION FOR COMPETENCY EVALUATION**

Comes now defendant LISA HOFSCHULZ, by and through attorney, Beau B. Brindley, and hereby moves the Court to order a competency evaluation and competency hearing for the defendant prior to the onset of trial in this matter.

**I.      Factual Background**

Trial in this matter is presently scheduled for February 18, 2020. A significant record regarding the events leading up to the scheduled trial date has already been made by the undersigned counsel both in written motions and orally before the Court. The relevant facts to this particular motion are as follows.

On February 10, 2020, while awaiting the return of the undersigned from St. Louis, Missouri in order to prepare for her trial with counsel, Lisa Hofschulz collapsed. Ms. Hofschulz lost consciousness, fell to the pavement, struck her head, and was totally unresponsive. Emergency services were summoned and Ms. Hofschulz was transported by ambulance to Northwestern Hospital. Ms. Hofschulz was intubated due to concerns she could not effectively breathe on her own and was admitted into the Intensive Care Unit. A copy of the discharge papers from the hospital illustrate that she was admitted to the ICU, intubated, and kept hospitalized until February 11, 2020. That discharge document is attached.

1

During her evaluation at the hospital, a trauma team conducted testing that revealed an aortic aneurysm. Subsequently, members of second treatment team found a previously unidentified heart murmur, which is reflected in the discharge papers. The bottom portion of the first page of the discharge papers shows that the diagnosis is not yet on file, and the test results will not be updated into the medical records for two weeks. Unfortunately for Ms. Hofschulz and this Court, the aortic aneurysm identification is one of the results that the records do not yet reflect. The hospital indicates that the trauma team's test results have not yet been updated into the system and are not reflected in the discharge papers.

Nonetheless, it remains the case that this defendant collapsed, lost consciousness for no explicable reason, suffered a serious head injury, had to be intubated, and was hospitalized for two days in the ICU with no determination made about the actual cause of this episode. The discharge papers indicate the finding of a heart murmur that, while by itself, is not dangerous, requires evaluation by a cardiologist and an echocardiogram. Both Mr. and Ms. Hofschulz report that the aortic aneurysm is one of the findings made by the trauma team, who indicated that immediate care from a cardiologist must occur. That cardiology appointment is being scheduled on February 17, 2020. Despite the fact that this test result is not yet uploaded into the record, the Court is confronted by a criminal defendant who has suffered a dangerous medical condition that involved a head injury, required intubation, has no diagnosis, and could recur at any time. That is alarming to the undersigned counsel as he evaluates how to try to deal with this defendant and prepare her for trial. The defendant was unable to focus on or read the voluminous documents counsel directed her to review during the week of February 10, 2020 to

2

Case 2:18-cr-00145-PP   Filed 02/17/20   Page 2 of 7   Document 83

prepare for trial and potential testimony. She was also recovering and unable to meet with counsel on February 13, 2020.

The undersigned counsel met with the defendant for the first time on February 14, 2020. It was only then that the details of this medical emergency could be related. Mr. Hofschulz had to provide many of the details. During the meeting on February 14, 2020, the undersigned was concerned that Ms. Hofschulz's mental cognition seemed greatly diminished. She was unable to focus on material questions, struggled to find the words needed for response, and became extremely tired during a two-hour meeting. She was unable to review medical charts with counsel and indicated that she was requiring sleep every two to three hours. The problems with her cognitive ability are magnified given the complex nature of the case. Her impairment substantially affects her ability to review the myriad pages of medical records involved in this case, which is critical to preparing her testimony. The injury has prevented that review, which counsel scheduled with her for the week of February 10, 2020.

During the February 14, 2020, meeting, the undersigned was not able to do any meaningful trial preparation with the defendant and the defendant was not able to materially assist in her defense for trial. The undersigned presumed that this was due to the recent head injury and the need to recover. The undersigned then met with Ms. Hofschulz again on February 16, 2020, after giving the defendant another day to recover. The February 16 meeting did not provide any better results. Ms. Hofschulz's reaction to questions remains significantly slowed from what it normally is when she interacts with counsel. She remains quickly fatigued and unable to focus on the necessary records and find the words to respond questions that need to be discussed in order for her to assist in

3

her defense. The quickness of her wits is obviously reduced at this time. She complains about repeated headaches. She is not at the level necessary to assist in preparation for trial in this case and to even begin preparing to testify. As a result, Ms. Hofschulz is presently unable to meaningfully assist in her defense.

The undersigned's assistant, Maria Almazan, sat with him while he questioned Ms. Hofschulz and listened to her reactions. Ms. Almazan's statement is attached. Ms. Almazan has prepared multiple defendants for trials with the undersigned. She has also spoken to Ms. Hofschulz on multiple occasions in the past. Ms. Almazan's statement reflects that Ms. Hofschulz's ability to respond to questions is significantly slowed when compared to her normal ability. Ms. Almazan further notes that Ms. Hofschulz appeared significantly fatigued, seemed to struggle to search for words, and was unable to meaningfully respond to questions. Ms. Almazan also spoke to Mr. Hofschulz regarding Ms. Hofschulz's condition and reports that Mr. Hofschulz has observed the same problems. After a head injury and stay in the ICU, the defendant's cognition is slowed. She is unable to stay focused and respond to detailed questions. And she is so rapidly fatigued that it is not possible to have detailed discussions with her.

**II.    Legal Standard**

In determining whether a defendant is competent to stand trial, a court must depend to some extent on counsel to bring the issues into focus. *Drope v. Missouri*, 420 U.S. 162, 176-77 (1975). Although a court is not required to accept without question a lawyer's representations concerning the competence of his client, *see United States ex rel. Rizzi v. Follette*, 367 F.2d 559, 561 (2nd Cir. 1966), an expressed doubt in that regard by one with "the closest contact with the defendant" is unquestionably a factor which should

be considered. *Drope*, 420 U.S. at 177 FN 13. Defense counsel's contention that the defendant is "not a person of sound mind and should have a further psychiatric examination" is sufficient to raise the issue of the defendant's competence to stand trial. *Id.* at 166. In this instance, the Court is guided by, not only the observations of the undersigned counsel, but the fact of the prior injury and ICU stay, and the independent observation of his assistant.

As elucidated by the United States Supreme Court, the test for competency has two prongs. To be legally competent, one must (1) be able to understand the nature and consequences of the proceedings; and (2) be able assist in the preparation of a defense. If a district court has reasonable cause to believe that the defendant may presently be incompetent, it must hold a competency hearing pursuant to 18 U.S.C. § 4241(a). This hearing should be preceded by a court-ordered psychological evaluation, as promulgated in 18 U.S.C. § 4241(b). The identification of potential competency issues by defense counsel is sufficient to constitute reasonable cause to believe that the defendant might be incompetent and necessitate the evaluation and hearing. *Drope,* 420 U.S. at 166.

A criminal defendant has Sixth and Fourteenth Amendment right to "a meaningful opportunity to present a complete defense." *Caffy v. Butler*, 802 F.3d 884, 895 (7th Cir. 2015) *citing Crane v. Kentucky*, 476 U.S. 683, 690 (1986). "It is well-settled that a defendant may not be tried unless he has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'" *Benefiel v. Davis*, 357 F.3d 655, 659 (7th Cir. 2004) *citing Dusky v. United States*, 362 U.S. 402, 402 (1960). Due Process requires that a defendant understand the proceedings against her AND participate in her own defense. *McManus v. Neal*, 779 F.3d 634, 656 (7th Cir. 2015). In this

instance, the record before the Court shows (1) that the defendant suffered a traumatic head injury and required intubation in intensive care just one week prior to trial; (2) that her counsel and a witness report that, in the wake of this injury, she cannot meaningfully assist in the preparation of her defense; and (3) there is no countervailing evidence that the government can cite to, in any sense, disprove the position of the defense. That means that the Court is confronted by a record showing an undeniable, severe injury suffered just before trial and an impairment thereafter that has been identified by counsel and another witness who observed his dialogue with the defendant. By any reasonable standard, that is sufficient to justify a competency evaluation and hearing so that these issues can be properly investigated, and this defendant permitted to meaningfully participate in her own defense.

In *McManus v. Neal*, the defendant suffered panic attacks that resulted in two hospitals stays. 779 F.3d 634, 657 (7th Cir. 2015). He was given medication that had significant effects on his cognitive ability. The Seventh Circuit granted the defendant's writ for habeas based on the state court improperly allowing the defendant to proceed with trial based on his competency. Here, the head injury suffered by Ms. Hofschulz has resulted in a cognitive consequence that prevents her from meaningfully participating in the preparation of her defense. She needs to be medically evaluated and permitted to recover to the point that she is again able to participate in the preparation of her defense.

WHEREFORE, the undersigned respectfully moves this Court to adjourn the scheduled trial, order a competency evaluation for Ms. Hofschulz, and thereafter conduct a hearing on the same issue prior to the litigation of any trial in this case.

Respectfully submitted,

Lisa Hofschulz
By:     s/ Beau B. Brindley

LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Blvd.
Suite 1410
Chicago, Illinois 60604
312.765.8878