UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

                                        Case No. 18-cr-145-pp

v.

LISA HOFSCHULZ,

        Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO RECONSIDER DENIAL OF COUNSEL OF CHOICE (DKT. NO. 102)**

---

On February 20, 2020—two days after defense Attorney Beau Brindley appeared on the February 18, 2020 trial date and informed the court that if it did not adjourn the trial he would be forced to withdraw as counsel for the defendant—the court issued a seventy-page order giving its reasoning for denying the defendant's second motion to continue the trial (dkt. no. 80), denying her motion to reconsider that decision (dkt. no. 85) and granting Brindley's motion to withdraw as counsel (dkt. no. 85). Dkt. No. 89. The defendant has asked the court to reconsider its refusal to allow Brindley to return to the case as co-counsel, arguing that the court should not have disqualified Brindley (and his colleague Attorney Michael Thompson) from being a part of her trial team. Dkt. No. 102. The court grants that motion.

I. <u>Events Since February 18, 2020</u>

On February 27, 2020, at the hearing the court had scheduled for the defendant to report on her progress in finding successor counsel to Brindley,

1

the defendant read a prepared statement indicating that Brindley was her counsel of choice and that she planned to litigate the court's decision to the fullest extent, but that she was making arrangements to retain Attorney Vadim Glozman. Dkt. No. 95 at 1. She asked for twenty-one days to make the necessary financial arrangements. Id. The court adjourned the hearing to March 13, 2020. Id. at 2.

Glozman appeared on the defendant's behalf at the March 13 hearing. Dkt. No. 99 at 1. He reported, however, that he had agreed to take the case on the condition that the court allow him to have Brindley as his co-counsel. Id. The court reiterated its concerns that Brindley had not been candid with the court and the government and that he had abused the judicial process, concluding that it would not allow Brindley to act as co-counsel. Id. at 2. Glozman responded that he was not sure that the defendant would want him to continue to represent her without having Brindley as his co-counsel, and asked the court to schedule a status conference in about two weeks so that the defendant could speak with Brindley. Id. Counsel told the court that he would be ready to proceed without Brindley but emphasized that Brindley was the defendant's counsel of choice. Id.

The court declined to set another status conference, noting that the defendant had known since February 18 that she needed to find new counsel, and opining that she and Glozman should have had a Plan B in the not-unlikely event that the court did not agree to allow Brindley to act as co-counsel. Id. After discussion of the impact of COVID-19 on scheduling, the

2

court set a final pretrial conference for November 19, 2020 and a trial for December 7, 2020; the court made clear to the defendant that any attorney she retained had to be ready to go to trial on December 7, 2020. Id. at 2-3.

On March 27, the defendant—through "her attorney of record" Glozman and "her counsel of choice" Brindley, filed this motion to reconsider. Dkt. No. 102. The defendant asserts that there is no evidence in the record of Brindley "committing any specific, provable misconduct in this case, or any evidence of him making any statement that is prove false by the evidence." Id. at 2. She argues that because there is no evidence proving that Brindley made any false statements or engaged in any unethical misconduct, the court must reconsider and allow Brindley and Thompson to represent the defendant. Id. The motion says that the defendant's counsel of choice now is a "team consisting of Mr. Brindley, Micha[e]l Thompson, and" Glozman. Id. at 1 n.1. Glozman asserts that he will be "lead counsel, thereby making any failure to try the case by Mr. Brindley incapable of derailing the trial date." Id. at 3.

The defendant attached several documents to the motion, including medical records, correspondence and emails. Dkt. Nos. 102-1 through 102-9.

II. Discussion

Despite the length of the court's February 20, 2020 order, the court's concerns with allowing Brindley to continue to represent the defendant came down to two things: circumstantial evidence indicating that the defendant might be trying to delay the trial and circumstantial evidence that Brindley had a history of seeking delays of hearings and trials at the last minute and for

3

sometimes dramatic reasons. The court's order recounted the events of the fifteen months that preceded Brindley being retained, not because Brindley had anything to do with those events, but because those events gave rise to the court's suspicion that either the defendant, her prior counsel or both were taking deliberate steps to delay the trial. Because of that concern, the court stated at a hearing on September 18, 2020—fifteen months after indictment—that it was setting a firm trial date of February 18, 2020, giving the parties five months to prepare (or re-prepare) for trial. Dkt. Nos. 59 at 2, 89 at 10-11.

Nine days later, Brindley filed a motion to substitute counsel. Dkt. No. 60. When the government stated that it had no objection if the substitution didn't delay the trial, dkt. no. 61, Brindley responded that he was scheduled to be in trial in another district starting February 10, 2020, "making it impossible" for him to go to trial in the defendant's case on February 18, 2020, dkt. no. 62. So—even though the court had set a firm trial date five months out, the defendant retained an attorney who was not available to go to trial on that date. On October 9, 2020, the court noticed a hearing for October 15, 2020 to discuss that issue, but Brindley responded that he was not available on *that* date because he would be in trial in Illinois state court, and asked for a hearing on October 25. Dkt. No. 63.

As noted above, the court already had concerns that the defendant may have tried to delay the trial. In less than three weeks, she had dismissed her prior counsel, retained a lawyer who was not available on the trial date the court had set and whose trial schedule prevented him from attending the

4

hearing the court had set to discuss its concerns about that fact. Given the court's own busy trial calendar, the court issued an order deferring ruling on the defendant's motion to substitute counsel and requiring that by the end of the day on October 25, 2019, the defendant advise the court whether Brindley could be available on February 18, 2020 or whether she wanted to make arrangements for a different lawyer. Dkt. No. 64. The court thought it made clear its concerns, noting that only nine days after it had "reluctantly" granted the defendant's motion to adjourn the trial, she'd moved to change lawyers and that the new lawyer was unavailable both for the scheduled trial and the hearing the court had scheduled to discuss that fact; that Brindley would be the defendant's third lawyer in fifteen months; that despite its reluctance, the court had adjourned the trial because it was concerned that the defendant would be denied her right to present a defense if it did not do so; that the congestion of the court's calendar made it difficult to find dates. Id. at 3-7.

The court believed then, and it believes now, that it made a clear record that it intended for the trial to take place on February 18. If Brindley could clear his schedule and be present, the defendant could proceed with Brindley. If not, she had time to make alternative arrangements. She did not. On October 21, 2019, the plaintiff filed a notice stating that she maintained her desire for Brindley to represent her "knowing this Court's view with respect to the trial date," asking the court to substitute Brindley as counsel "immediately" and stating that "Mr. Brindley confirms that, if necessary, he will be ready and available to try this case on February 18, 2020 as scheduled." Dkt. No. 65.

5

This, despite Brindley having asserted just two weeks earlier that due to a trial in the Northern District of Illinois, it would be "impossible" for him to appear at trial here on February 18. The court, while leery of the phrasing "if necessary," granted Brindley's motion to substitute, "[g]iven the defendant's acknowledgment that the court will not adjourn the trial date to accommodate successor counsel's schedule." Dkt. No. 66.

In the motion to reconsider, the defendant asserts that "unless this Court can cite evidence showing that Mr. Brindley either (1) was reasonably prepared to try the case when he said he was not; or (2) his therapist wrote a fraudulent report, Mr. Brindley's conduct comports with the letter of the ethical rules." Dkt. No. 102 at 3. She asserts that "[i]n the absence of some evidence that Mr. Brindley actually made some kind of demonstrably false statement to this Court, there is no basis for denying Ms. Hofschulz her counsel of choice." Id. at 4. She devotes the remainder of the motion to addressing the various pieces of circumstantial evidence the court recounted in its February 20 order, evidence that the court felt showed a pattern of last-minute requests for delays and eleventh-hour tactics.

The motion argues that on February 18, 2020, when the court accepted Brindley's motion to withdraw and adjourned the trial, it did not lay out all that circumstantial evidence. Id. at 4. It contends that the court did not give Brindley the chance to respond to the information it had learned when it had reviewed some of the cases he told the court had prevented him from being

6

prepared for the February 18 trial. Id. The motion takes the opportunity the court did not give and addresses much of that evidence.

For example, the motion discusses the medical records relating to the defendant's February 10, 2020 fall. As noted, the trial was scheduled for February 18, 2020 and had been since September 2019. As of February 13, 2020, the court already had denied Brindley's first motion to adjourn the trial, filed at 5:17 p.m. on January 30, 2020—the evening before the final pretrial conference scheduled for 8:30 a.m. on January 31, 2020. The court had adjourned the final pretrial conference to February 14, 2020—the last business day before the February 18, 2020 trial. At 4:45 p.m. on February 13, 2020, Brindley filed a second motion to adjourn the trial. Dkt. No. 80. The motion was fifteen pages long. At page 8, Brindley stated that that on February 10, 2020, the defendant had fallen "and suffered a significant head and face injury," and that she had been hospitalized on February 10 and 11, 2020. Id. at 8. Brindley mentioned the fall in a handful of other places in the motion, but for the most part, the motion related to Brindley's trial schedule and the personal issues with his wife and the unexpected passing of her service dog.

At the February 14, 2020 adjourned final pretrial conference, Brindley informed the court that he'd learned of the fall only a few hours before the hearing, that it had taken place on February 10, that the defendant had been taken to the hospital and intubated because she couldn't breathe on her own, that she'd been diagnosed with an aortic aneurysm and that she needed to see a cardiologist the following week. Dkt. No. 89 at 30. When Brindley told the

7

court that the defendant would have to get the records regarding the injury from the hospital, the defendant and Robert Hofschulz, her former husband (and co-defendant) waived their appearances and left the courtroom to obtain the records. Id. After hearing argument about how forcing the defendant to go to trial on the 18th would pose a health risk, the court denied the motion to adjourn the trial. Id. at 31; Dkt. No. 87.

The day before trial, Brindley provided a one-page After Visit Summary indicating that the defendant had been at Northwestern Medicine on February 10-11 following a fall; it mentioned the intubation but nothing about an aortic aneurysm. Dkt. No. 83-1. At the February 18, 2020 trial—or, more accurately, the date scheduled for trial—Brindley offered no additional medical records. The defendant provided no medical records at the February 27, 2020 hearing.

There are medical records attached to the motion to reconsider. Dkt. No. 102-1. They confirm that the defendant was in the hospital on February 10-11, 2020 and that the doctors ran many tests. They indicate that a CT angiography showed "mild aneurysmal dilatation of the ascending thoracic aorta measuring 39 x 41 mm." Id. at 28. A CT of the abdomen and pelvis showed "no abdominal aortic aneurysm." Id. at 31. The defendant also attached a February 19, 2020 letter from a nurse at Froedtert and the Medical College of Wisconsin, indicating that the defendant had been seen on that date with "post concussion symptoms." Dkt. No. 102-2.

Finally, the defendant attached an undated affidavit (which is not notarized and does not reference 28 U.S.C. §1746) from Robert Hofschulz,

explaining that the fall happened in Chicago while the defendants were waiting for Brindley to return from a trial and meet with the defendant. Dkt. No. 102-3. Mr. Hofschulz gives the details of the fall and the trip by ambulance to Northwestern, the nearest hospital; he also says that one of the doctors had told the couple that the defendant had an aortic aneurysm and a heart murmur. Id. at 1. Mr. Hofschulz indicated that the defendants met with Brindley on February 14, 2020 and told Brindley about what had happened. Id. at 2. He also reported that he had tried to obtain the medical records after the hearing on the 14th, but that the full patient file was not available. Id.

The motion to reconsider maintains that this evidence proves that the defendant did suffer a severe injury a week before trial and that everything that Brindley told the court on February 14, 17 and 18 about that injury and the risk it posed the defendant was true. Dkt. No. 102 at 4-6, 13-14.

The motion similarly responds to or addresses other pieces of circumstantial evidence of delay the court cited in its February 20 order. While parts of the motion recite the same facts about the rigors of Brindley's trial schedule between October 2019 and January 30, 2020 that he laid out in detail in his prior motions to adjourn, it also notes that:

- While the court speculated about the fact that Brindley did not disclose any expert witnesses or file motions *in limine* by the December 20, 2019 deadline the court had set, there are cases in which he has elected, for strategic reasons, not to utilize experts or file motions *in limine*, id. at 10-11;

- While the court speculated that Brindley had cited the health of his wife's late service dog, Rocko, in seeking a continuance in another

9

case, the motion in the other case related to a different dog, Brindley's bichon frise′, Beowulf, id. at 15;

- While the court discussed another case in which Brindley had sought a continuance based on his client's fall and had not provided medical records, the court in that other case since had received the records and had elected not to enforce the imposed sanction, id. at 16-17;

- While the court had speculated that Brindley had sought a continuance in another case based on his wife's health, the true basis for that request for continuance was related to another attorney, id. at 17;

- While the court had noted that Brindley had appeared in the courtroom on February 18 with no files or other evidence that he intended to try the case, Brindley attached texts between himself and his assistant which show, he asserts, that he had a driver bring the boxes to Milwaukee from Chicago that morning, id. at 18 and Dkt. No. 102-9;

- While the court referenced a case in which Brindley was to appear in Michigan to address an order to show cause on the date the trial in Milwaukee was to take place, Brindley's colleague Thompson had planned to appear at that hearing, id.; and

- While the court referenced a Seventh Circuit case in which that court had questioned Brindley's veracity, the Illinois Attorney Registration and Disciplinary Commission had found no ethical violation, id. at 18-19.

At the time Brindley moved to substitute as counsel, the court had concerns that the defendant might be trying to delay the trial. When it turned out the defendant had retained a lawyer who was not available for trial on the date the court had set and whose trial schedule prevented him from attending the hearing the court scheduled to discuss that fact, the court saw that as confirmation of its concerns. When the December 2019 deadline for disclosing expert witnesses and filing motions *in limine* passed with nothing from the defendant—particularly given that the defendant's prior counsel had asked to

10

adjourn the fall 2019 trial date for the express purpose of finding an expert—the court interpreted the silence as a harbinger of a future request for delay.

The first the court heard from Brindley after the court granted his motion to substitute was the motion he filed after hours the night before the final pretrial conference, asking for an adjournment of the trial due to the rigors of his trial schedule over the past several months (the issue the court had said that it would not accommodate when it allowed Brindley to substitute) and Rocko's death and the impact that had on Brindley and his wife. Brindley had not contacted the government to let the prosecutors know that he was going to be seeking an adjournment. He had not contacted the court to give it a "heads-up." He filed the motion at 5:17 p.m. with a hearing scheduled the first thing the following morning. The court saw this as confirmation of its concerns about delay tactics.

While Brindley did file four substantive jury instructions (dkt. no. 75) and responded in detail to the government's objections to those instructions (dkt. no. 77), the court received the next motion to adjourn the trial fifteen minutes before close of business the day before the adjourned pretrial conference (scheduled for the last business day before trial). Dkt. No. 80. This is the motion that mentioned the fall; it provided no details about the fall or proof of the defendant's medical condition. The court saw this as confirmation of its concerns about delay tactics.

When Brindley described the fall at the February 14, 2020 hearing, the court heard for the first time about an aortic aneurysm and risk to the

11

defendant if the trial went forward, even as the defendant was sitting in the courtroom. The court viewed that, combined with the absence of any medical records supporting the claims of the severity of the injury, as confirmation of its concerns about delay tactics. When Brindley filed more documents over the holiday before the first day of trial (including a transcript in which a judge told him he'd given the best closing argument in a criminal case the judge had ever seen), and when Brindley appeared in court on what was supposed to be the first day of a seven-day trial with no boxes, no files—the court viewed that as confirmation of its concerns about delay tactics. And when the court looked at the dockets of the cases that Brindley had cited in his various eleventh-hour motions and saw eleventh-hour motions and delays in *those* cases, the court viewed that as confirmation of its concerns about delay tactics.

Brindley is correct that the court has not accused him of making false statements. It never occurred to the court that the back-to-back trials Brindley described did not occur or were not grueling. It never occurred to the court that Rocko did not suddenly become sick, or that it was not traumatic for Brindley and his wife to lose him in such an unexpected and painful way. What *did* occur to the court was that Brindley was leveraging the details of his professional and personal life to obtain the continuance of a trial that the court had stated months before it was not going to continue.

Things happen. Trials extend beyond their expected end dates. Family members have crises. Children or parents become ill. Relationships fall apart. People are injured. Most lawyers have had to seek a continuance at some point

12

in their careers for one or more life events. Lawyers and opposing counsel understand that. The fact that several such events happened to Brindley in the months leading up to the February 18 trial is of less moment in terms of the court's concerns than when and how he gave the government and this court notice of these events, given the prior history of the case.

This is water under the bridge. To the extent that the court's concerns and skepticism unfairly cast aspersions on Brindley, the court apologizes. But the defendant wants the court to allow Brindley and Thompson to re-join her trial team. Given the above history, the court is concerned.

The motion states that Brindley has "taken a break from his practice," and that there is "no evidence that he will have any impairment" by the December 7, 2020 trial date. Dkt. No. 102 at 3. It states that the "undersigned"—Glozman—"will be lead counsel, thereby making any failure to try the case by Mr. Brindley incapable of derailing the trial date." Id. The court does not feel as assured by the latter assertion as Glozman. Glozman told the court in March that the defendant had hired him only on the condition that the court allow Brindley to act as his co-counsel. Brindley conceded in the motion to reconsider that

> [a] review of his cases shows that Mr. Brindley tries a large number of cases. That is plainly what he is hired to do. In so doing, Mr. Brindley often talks with counsel and obtains agreements to continue and rearrange trial dates in order to make the schedule work. That is apparent from the record in his cases.

Id. at 7. If Brindley is back in practice, back to scheduling large numbers of trials, back to juggling the calendar, the court has no assurance that a version

13

of the situation he described in his motions to adjourn the February 18, 2020 trial will not arise between now and December 7, or that if that happens, the defendant will not terminate Glozman's representation.

The court has recounted in prior decisions the government's concerns about the continuing delays in this case. Some of the witnesses are people who have suffered from addictions, who are concerned about testifying. The government has prepared for trial at least once, bringing witnesses into the courtroom to acclimate them. As time passes, any witness faces difficulties with memory and detail. The government has opposed adjournments throughout the case. The defendant has a right to a fair trial, but so does the United States, and its rights have been affected by the events in the defendant's life and in Brindley's. The court cannot let the defendant's insistence on having Brindley represent her affect those rights further.

The defendant cites many cases in support of her argument that she has a Sixth Amendment right to the attorney of her choice. She asserts that "an unreasoning and arbitrary insistence upon expeditious [sic] in the face of a justifiable request for delay violates the right to the assistance of counsel." Id. at 20 (citing United State v. Balsiger, 910 F.3d 942, 949-50 (7th Cir. 2018)). The defendant left a couple of words out of that quote. The Balsiger court actually said, following its statement that a trial judge "retains wide latitude to balance the right to choice of counsel against the needs of fairness to the litigants and against the demands of its calendar," Balsiger, 910 F.3d at 949-50 (quoting United States v. Sellers, 645 F.3d 830, 834 (7th Cir. 2011)), that

14

"[i]ndeed, '*only* an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel,'" id. (quoting United States v. Carrera, 259 F.3d 818, 825 (7th Cir. 2001)) (emphasis added).

The court's ruling linking the adjournment of the February 18, 2020 trial to Brindley's withdrawal as counsel was not unreasoning or arbitrary. The defendant notes, however, that this case no longer is in a denial-of-continuance posture. The defendant has not asked to adjourn the trial. The question, then, is whether the court has a basis for disqualifying Brindley. The government did not ask the court to disqualify him. At the March 13, 2020 hearing, when Glozman told the court that the defendant had hired him on the condition that the court allow Brindley to act as co-counsel, the government responded that it took no position on who represented the defendant as long as the court put a firm trial date on the calendar as soon as possible. Dkt. No. 99 at 1.

The Seventh Circuit has held that "granting a motion for disqualification has 'immediate, severe, and often irreparable . . . consequences' for the party and disqualified attorney." Watkins v. Trans Union, LLC, 869 F.3d 514, 519 (7th Cir. 2017) (quoting Freeman v. Chi. Musical Instr. Co., 689 F.2d 715, 719 (7th Cir. 1982)). "Disqualifying a lawyer immediately deprives the losing party from the 'representation of [her] choice' and disrupts the litigation." Id. "[T]he decision to disqualify an attorney in a criminal case requires an evaluation of the interests of the defendant, the government, the witness and the public in view of the circumstances of each particular case." United States v. O'Malley,

786 F.2d 786, 790 (7th Cir. 1986) (citing United States v. James, 708 F.2d 40, 44 (2d Cir. 1983); United States v. Cunningham, 672 F.2d 1064, 1073 (2d Cir. 1982)).

The court granted Brindley's request to withdraw on the day of trial and granted the motion to adjourn the trial (over the government's objection). When the defendant then insisted that she wanted Brindley to un-withdraw, the court denied that request because of the concerns it has stated in this and other orders. Brindley withdrew to force an adjournment of a trial the court had indicated it would not adjourn, under circumstances that caused the court to suspect that either he, the defendant or both were engaging in delay tactics. The court never has said that it was "disqualifying" Brindley, but it understands that its refusal to allow him to act as co-counsel with Glozman is, in effect, a *sua sponte* disqualification.

Given the defendant's Sixth Amendment right to counsel of her choice and the fact that there has been no request to adjourn the trial to accommodate Brindley, the court's *sua sponte* disqualification of him as co-counsel is not supported by Seventh Circuit law. It is in the defendant's interest to have the legal team of her choice. It is in the government's interest that this case reach trial on December 7, without side issues to threaten the validity of a jury's verdict. It is in the public's interest that this case reach a conclusion, given that it has been pending for twenty-seven months.

The court will grant the motion to reconsider its refusal to allow Brindley and Thompson to act as co-counsel with Attorney Glozman.

16

The trial is scheduled for December 7, 2020. The court will not entertain defense motions to adjourn the trial on the basis of the schedules of the various defense counsel. Unforeseen events may occur, particularly given the continued threat posed by the coronavirus pandemic and the rising number of confirmed positive cases of COVID-19 in Wisconsin as of this writing. The court expects that if any attorney, party or witness develops health issues, those problems will be reported to the court immediately, along with reasonably available supporting documentation. The court plans to do its level best to see this trial go forward on December 7, 2020, barring a plea or the need to suspend in-person trials and hearings due to the virus.

III. Conclusion

The court **GRANTS** the defendant's Motion to Reconsider Denial of Counsel of Choice. Dkt. No. 102.

The court **REVERSES** its March 13, 2020 denial of the defendant's March 13, 2020 oral request to have Attorney Brindley act as Attorney Glozman's co-counsel. Dkt. No. 99.

The court **ORDERS** that Attorneys Beau Brindley and Michael Thompson may represent defendant Lisa Hofshulz, along with lead counsel Vadim Glozman.

The court **ORDERS** that the clerk's office must modify the docket to reflect that Attorney Vadim Glozman is lead counsel and must restore Attorney

Beau Brindley and Attorney Michael J. Thompson as co-counsel with Attorney Glozman.[1]

Dated in Milwaukee, Wisconsin this 14th day of September, 2020.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**

---

[1] The court's February 20, 2020 order required the clerk's office to terminate Brindley as counsel for Lisa Hofshulz. Dkt. No. 89 at 70. The docket, however, still shows Brindley as lead counsel. The clerk's office terminated only Thompson.